**J.C. HAWKINS, et al., Plaintiffs,**

v.

**The UPJOHN COMPANY, et al., Defendants.**

No. 6:94 cv 12.

United States District Court, E.D. Texas, Tyler Division.

Sept. 29, 1994.

---

602

Michael Douglas Mosher, David Christian Read, Hytken & Mosher, L.L.P., Paris, TX, Jim D. Lovett, Jim D. Lovett & Associates, Paris, TX, for plaintiffs.

George Richard Grainger, Grainger Howard Davis & Ace, Tyler, TX, Marie S. Woodbury, Andrew See, Shook, Hardy & Bacon, Kansas City, MO, for Upjohn Co.

Steven MacArthur Mason, Asst. U.S. Atty., Tyler, TX, for Paul Leber.

Barbara Pilo, Fowler Wiles Norton & Keith, Dallas, TX, Adele Baker, Wright Robinson McCammon Osthimer & Tatum, Washington, DC, for Judith K. Jones.

Robert E. Scott, Semmes, Bowen & Semmes, Baltimore, MD, Joseph Anthony Turano, Bryan J. Maedgen, Strasburger & Price, Dallas, TX, Stephen S. McCloskey, Semmes, Bowen & Semmes, Baltimore, MD, for Mitchell B. Balter, E.H. Uhlenhuth, Robert Straw.

John Anthony Scully, Cowles & Thompson, Dallas, TX, Don Wayne Kent, Cowles & Thompson, Tyler, TX, Charles F. Preuss, Preuss Walker & Shanagher, San Francisco, CA, for William C. Dement.

Walter Thomas Henson, Ramey & Flock, Tyler, TX, Jonathan B. Tropp, Thomas J. Groark, Jr., Day Berry & Howard, Hartford, CT, for Robert Purpura.

Otis W. Carroll, Jr., Ireland Carroll & Kelley, Tyler, TX, George Joseph, Kirkland & Ellis, Chicago, IL, for Harold Decker.

George Monroe Kryder, III, Fletcher L. Yarbrough, James E. Coleman, Jr., Carrington Coleman Sloman & Blumenthal LLP, Dallas, TX, for Steven Scheve, Shook, Hardy & Bacon.

## MEMORANDUM OPINION AND ORDER

STEGER, District Judge.

### I. Background

On January 6, 1994, J.C. Hawkins, Glenda Hawkins, Michael Hawkins, Patsy Porter, and William Porter ("plaintiffs") filed a complaint in the United States District Court for the Eastern District of Texas, Tyler Division. The named defendants are The Upjohn Company, Dr. Judith K. Jones, Dr. Mitchell H. Balter, Dr. E.H. Uhlenhuth, Robert H. Straw, Dr. Paul Leber, Dr. Robert Purpura, Dr. William C. Dement, Harold Decker, Steve Scheve, and Shook, Hardy & Bacon ("defendants"). Defendant Upjohn, a Delaware Corporation with its principal place of business in Kalamazoo, Michigan, is the manufacturer of Halcion and Xanax, the drugs at issue in this litigation. Defendants Jones, Balter, Uhlenhuth, Purpura, Dement, and Straw are research scientists either employed by, or consultants to, defendant Upjohn.[1] Defendant Decker is employed by defendant Upjohn as division vice-president of litigation.[2] Defendants Shook, Hardy & Bacon and Scheve are outside counsel to defendant Upjohn involved in Halcion litigation.[3] Finally, defendant Leber is employed

---

1. Defendant Jones is resident of Virginia. Jones Aff. Defendant Balter was a resident of the District of Columbia. Balter Aff. However, February 5, 1995 he died. Sugg. of Death. Defendant Uhlenhuth is a resident of New Mexico. Uhlenhuth Aff. Defendant Purpura is a resident of Connecticut. Purpura Aff. Defendant Dement is a resident of California. Dement Aff. Defendant Straw is a resident of Michigan. Straw Aff.

2. Defendant Decker is a resident of Michigan. Decker Aff.

3. Defendant Shook, Hardy & Bacon is a law firm with its principal place of business in Kansas City, Missouri. McLarney Aff. Defendant

by the Food and Drug Administration ("FDA").[4]

The complaint alleges four causes of action. In count I, J.C. and Glenda Hawkins ("RICO plaintiffs") allege a conspiracy against all of the defendants except Upjohn ("RICO defendants"), in violation of 18 U.S.C. § 1961 *et seq.* ("RICO").[5] Count II alleges that the defendants are participants in a common-law civil conspiracy to commit fraud and market an unreasonably dangerous product. Count III alleges that defendants' conduct with regard to Halcion constitutes fraud, negligence, and gross negligence. Finally, Count IV alleges defendant Upjohn is strictly liable for any injury caused by Halcion.

Each of the RICO defendants filed a motion to dismiss the claims against them pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.[6] In each of the motions, the RICO defendants argue that this court lacks personal jurisdiction over them. Plaintiffs filed a response to these motions. Accordingly, these motions are ripe for adjudication. In the interest of judicial economy, this court will address all of the RICO defendants' motions in this opinion and order.

## II. Legal Standard for Motion to Dismiss

 When a challenge is made to the court's personal jurisdiction, the plaintiff has the burden of making a prima facie case by alleging facts in the complaint and accompanying affidavits sufficient to establish personal jurisdiction over the non-resident defendants. *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir.1989); *Caldwell v. Palmetto State Savings Bank of South Carolina,* 811 F.2d 916, 917 (5th Cir.1987); *Caldwell,* 811 F.2d at 917. The court must accept the uncontroverted allegations of the plaintiff as true. *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990); *D.J. Invest., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d

542 (5th Cir.1985). Moreover, conflicts in the facts alleged by the parties must be resolved in the plaintiffs' favor. *Caldwell,* 811 F.2d at 917.

## III. Analysis

### A. Introduction.

This court is presented with the issue of whether it has personal jurisdiction over the RICO defendants. Plaintiffs argue that RICO creates nationwide service of process. Further, plaintiffs maintain that since RICO creates nationwide service of process, the RICO defendants need only have minimum contacts with the United States for this court to exercise personal jurisdiction. However, this court need not resolve this constitutional issue.

RICO does not provide for unlimited nationwide service of process. Rather, it only authorizes nationwide service of process when the court has personal jurisdiction over one of the alleged RICO conspirators. Accordingly, this court must determine whether the Texas long-arm statute reaches one of the RICO defendants and whether one of the RICO defendants has minimum contacts with Texas. In this case, no RICO defendant has minimum contacts with Texas. Therefore, this court does not have personal jurisdiction over any of them.

### B. Personal Jurisdiction.

 In federal question cases, a court has personal jurisdiction over non-resident defendants only if they are amenable to service of process and the exercise of jurisdiction comports with due process. *Omni Capital International v. Rudolf Wolff & Co.,* 484 U.S. 97, 111, 108 S.Ct. 404, 413, 98 L.Ed.2d 415 (1987); *Dalton v. R. & W. Marine, Inc.,* 897

---

Scheve is a member of the firm, and is a resident of Kansas. Scheve Aff.

**4.** Defendant Leber is a resident of Maryland. Leber Aff.

**5.** This allegation invokes the subject matter jurisdiction of this court by raising a federal question.

**6.** Defendant Upjohn also filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. However, the legal and factual basis for deciding that motion is different than for resolving the motions filed by the RICO defendants. Therefore, defendant Upjohn's motion will be ruled upon by separate order of this court.

F.2d 1359 (5th Cir.1990).[7] To determine whether the RICO defendants are amenable to service of process, the court "looks either to a federal statute or to the long-arm statute of the State in which it sits." *Omni Capital,* 484 U.S. at 105, 108 S.Ct. at 410; Fed. R.Civ.P. 4(e). Accordingly, the threshold issue raised in this case is whether RICO provides for nationwide service of process.

### 1. Service of Process.

■ Plaintiffs assert that RICO, sections 1965(b) and/or (d), creates nationwide service of process. The Fifth Circuit Court of Appeals, in *Caldwell v. Palmetto State Savings Bank of South Carolina,* 811 F.2d 916 (5th Cir.1987), implicitly recognized that RICO creates nationwide service of process. *Id.* at 918 ("The plaintiffs also assert the district court had personal jurisdiction because the RICO statute provides for nationwide service of process.") However, *Caldwell*'s sparse treatment of the issue leaves this court with the necessity of determining the parameters of such nationwide service of process. Great light is shed on the issue by *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535 (9th Cir.1986); *cf. Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir.1987) (court held that section 1965(b) creates nationwide service of process which authorizes a court to exercise personal jurisdiction over the non-resident defendants if they have minimum contacts with the United States).

In *Butcher's Union,* the Ninth Circuit held that "section 1965(b) makes clear[ ] the right to nationwide service in RICO suits is not unlimited." *Id.* at 539. Rather, "[f]or nationwide service of process to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Id. Butcher's Union*'s interpretation is supported by the *Caldwell* court's recitation of section 1965(a) of RICO, which states that a civil action may

be instituted where a defendant "resides, is found, has an agent, or transacts his affairs," immediately following the implicit recognition that RICO creates nationwide service of process. *Caldwell,* 811 F.2d at 918; 18 U.S.C. § 1965(a).

*Caldwell* further supports this conclusion. In *Caldwell,* the court, after noting RICO created nationwide service of process, engaged in a due process analysis. *Id.* at 918. In so doing, the court analyzed whether the defendants had minimum contacts with Texas. *Id.* The court concluded the non-resident defendant did not have the requisite contacts with Texas; therefore, the court held that the district court lacked personal jurisdiction. *Id.* As such, the court without stating its reasoning, held that under RICO, it was required to determine whether at least one of the non-resident defendants had minimum contacts with Texas.

■ This court is presented with a recent Fifth Circuit case, *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir.1994), which held that the 1934 Securities Exchange Act ("SEA") creates nationwide service of process. *Busch* does not undermine this court's interpretation of RICO because the nationwide service of process provision in the SEA is more broad than the limited provision in RICO. Section 27 of the SEA provides in pertinent part:

> Any suit or action to enforce any liability or duty created by this chapter ... may be brought in *any such district [where an act or transaction constituting a violation occurred]* or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found....

15 U.S.C. § 78aa. The more limited nationwide service of process provision in RICO states:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the Unit-

---

**7.** This standard is also applicable in diversity cases. *See e.g. Polythane v. Marina Ventures International, Ltd.,* 993 F.2d 1201, 1203 (5th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1064, 127 L.Ed.2d 383 (1994).

ed States *in which such person resides, is found, has an agent, or transacts his affairs.*

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that *other* parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States....

. . .

(d) All *other* process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.[8]

18 U.S.C. § 1965 (emphasis added).

Under RICO, suit *only* can be filed in a district in which the defendant "resides, is found, has an agent, or transacts his affairs." This venue provision modifies section 1965(b). As such, when sections 1965(a) and (b) are read together, the Ninth Circuit's understanding of nationwide service of process under RICO is confirmed. *See Butcher's Union*, 788 F.2d at 539. That is, if one defendant before the court has the required minimum contacts with the forum state, then, *other* parties are subject to nationwide ser-

vice of process. *See id.;* 18 U.S.C. § 1965(b).

RICO is markedly different than the SEA in this respect. The SEA unambiguously states that suit can be brought in a district in which a violation occurred *or* in a district in which the "defendant is found or is an inhabitant or transacts business." Thereafter, the SEA states that the defendants are subject to nationwide service of process. The more broad nationwide service of process provision in the SEA is necessary because a suit can be brought in any district in which a violation occurred. Such a broad provision is not needed under RICO since venue only lies where at least one defendant "resides, is found, has an agent, or transacts his affairs" and, accordingly, is subject to the court's personal jurisdiction.[9]

Because RICO does not provide for nationwide service of process absent one of the RICO defendants being subject to the court's personal jurisdiction, this court must determine whether the Texas long-arm statute reaches one of the RICO defendants and whether exercising personal jurisdiction over such defendant would comport with due process. *See Butcher's Union*, 788 F.2d at 539; *see also Caldwell*, 811 F.2d at 918.

The Texas long-arm statute purports to reach non-resident defendants that commit torts, in whole or in part, in Texas. *See*

---

8. This provision merely authorizes nationwide service of "other" process. It does not establish nationwide service of process for personal jurisdiction purposes. Plaintiffs' claim that section 1965(d) creates nationwide service of process has not been adopted by any United States Court of Appeals. The Seventh and Ninth Circuits held that section 1965(b) creates nationwide service of process. *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668 (7th Cir.1987); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir.1986). However, several district courts have held that section 1965(d) creates nationwide service of process. *See e.g. Monarch Normandy Square Partners v. Normandy Square Associates Ltd. Partnership*, 817 F.Supp. 896, 898 (D.Kan. 1993); *University Sav. Ass'n v. Bank of New Haven*, 765 F.Supp. 35, 37 (D.Conn.1991); *American Trade Partners, L.P. v. A–1 Intern. Importing Enterprises Ltd.*, 757 F.Supp. 545, 556 (E.D.Pa. 1991).

This reading of section 1965(d) should not be adopted because it is contrary to the plain meaning of the words used. *Jones v. Liberty Glass Co.*,

332 U.S. 524, 531, 68 S.Ct. 229, 233, 92 L.Ed. 142 (1947) (rule of statutory construction that common meaning of words used should be adopted by the court). Additionally, an interpretation that section 1965(d) creates nationwide service of process, in addition to section 1965(b), is contrary to the doctrine of *noscitur a sociis*. *Sweet Home Chapter of Communities for a Great Oregon v. Babbitt*, 17 F.3d 1463, 1465 (D.C.1994) (the meaning of a statutory term is ascertained by reference to words associated with it in a statute).

9. This court need not address *Busch*'s holding that a non-resident defendant need only have minimum contacts with United States under a broad nationwide service of process provision. *Busch*, 11 F.3d at 1258; *accord Lisak*, 834 F.2d at 671; *cf. Busch*, 11 F.3d at 1259–60 (Garza, J. dissenting) (arguing that even under the nationwide service provision of the SEA, the defendant's contacts with the forum state, Texas, are relevant, rather than defendant's contacts with the United States). This constitutional debate is better left for a later date.

Tex.Civ.Prac. & Rem.Code § 17.042(2). As interpreted, this statute authorizes service of process to the extent allowable by the constitution. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990). Thus, in determining whether this court has personal jurisdiction over one of the RICO defendants, this court need only engage in a due process analysis.

### 2. Due Process Analysis.

■ There are two constitutional inquiries to determine whether a court possesses personal jurisdiction: (1) does the non-resident defendant have minimum contacts with the forum, and (2) does maintenance of the suit against the non-resident defendant offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Asahi v. Cheng Shin*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

"The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum state." *Asahi*, 480 U.S. at 108–09, 107 S.Ct. at 1030 (internal citations and quotations omitted). In expanding on this standard, the Court stated that "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.' " *Id.* at 109, 107 S.Ct. at 1030 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)).

■ Minimum contacts generally fall into two categories. First, if the defendant has "continuous and systematic" contacts with the forum state so as to have a presence in that state, then general jurisdiction exists even though the contacts are unrelated to the cause of action. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984).

Alternatively, specific jurisdiction can be based on a single contact with the forum state, provided that the contact and the cause of action are related. *See id.* at 414 n. 8, 104 S.Ct. at 1872 n. 8; *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980); *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183; *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987). Either, specific jurisdiction or general jurisdiction is enough to establish minimum contacts.

■ As to the second *International Shoe* inquiry, this court must consider the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, as well as the judicial system's interest in efficiently resolving controversies. *Asahi*, 480 U.S. at 113, 107 S.Ct. at 1032–33 (1987); *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564.

■ The complaint does not allege that any of the RICO defendants have continuous and systematic contacts with Texas. *See* Plaintiffs' Original Complaint. In fact, there is no significant reference to Texas in the complaint other than the claim that the alleged conspiracy affected people in Texas. *See id.* None of the RICO defendants are residents of Texas, none work in Texas, and none have an agent in Texas. *See* Jones, Balter, Straw, Leber, Uhlenhuth, Decker, Purpura, Dement, Scheve, and Shook, Hardy & Bacon Affs. As such, the RICO defendants' contacts with Texas are insufficient to establish general jurisdiction under *Helicopteros Nacionales de Colombia*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ Plaintiffs argue that this court has specific jurisdiction based on several theories. First, plaintiffs allege that the defendants engaged in a civil conspiracy, a tort under Texas law.[10] Plaintiffs do not allege

---

10. The Texas tort of civil conspiracy has five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object; (4) one or more unlawful overt acts; and (5) damage as a proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983).

the conspiracy took place in Texas. Thus, the conspiracy claim raises the issue of whether this court has personal jurisdiction over the RICO defendants because the effects of such alleged conspiracy were manifested in Texas. It is recognized that a tortious act occurring outside the forum state, that has effects inside the state, may be sufficient to confer specific jurisdiction. *See Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

This principle, set forth in *Calder* and *Keeton,* has been further developed by the Fifth Circuit Court of Appeals. In *Southmark Corp. v. Life Investors,* 851 F.2d 763, 772 (5th Cir.1988), the Fifth Circuit held that mere allegations of a tort occurring outside the forum state is not sufficient to meet the purposeful availment requirement. Rather, the court held, it must be shown that the alleged tortfeasor's intentional actions were purposefully directed toward the forum state and the tortfeasor had knowledge that the brunt of the injury would be felt by a particular resident of the forum state. *Id.* at 772–73; *see also Calder,* 465 U.S. at 788–89, 104 S.Ct. at 1486–87; *Keeton,* 465 U.S. at 774, 104 S.Ct. at 1478.

There is no allegation in the complaint that the alleged conspiracy was expressly aimed at Texas, nor an allegation that the alleged tortfeasors had knowledge that a particular Texas resident would suffer the brunt of the harm. Thus, even though the complaint alleges a intentional tort, a civil conspiracy under Texas law, *Southmark* dictates this court should not exercise personal jurisdiction. *See* 851 F.2d at 772–73; *see also* 465 U.S. at 788–89, 104 S.Ct. at 1486–87. This conclusion is supported by *Thomas v. Kadish,* 748 F.2d 276, 282 (5th Cir.1984), *cert.*

*denied,* 473 U.S. 907, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985), which held that the effects of an alleged conspiracy in the forum state are insufficient to grant the court personal jurisdiction over the non-resident co-conspirators.

▮ Even though the pleadings are somewhat unclear, it appears the plaintiffs also argue that this court has personal jurisdiction over the RICO defendants under a "conspiracy theory" of personal jurisdiction; that is, this court has jurisdiction over the RICO defendants because it has general jurisdiction over a co-conspirator, presumably defendant Upjohn.

There are numerous problems with plaintiffs' contention that if this court has personal jurisdiction over one of the conspirators, it can exercise personal jurisdiction over the co-conspirators as well. First, there is no support in the Fifth Circuit, or any other Circuit for that matter, to support this court exercising personal jurisdiction on this theory.

In fact, the little case law on this topic is contrary to the plaintiffs' position. In *Bamford v. Hobbs,* 569 F.Supp. 160, 169 (S.D.Tex.1983), the court stated, "no court has conferred jurisdiction over an alleged conspirator merely because jurisdiction exists as to a fellow alleged conspirator." In the only Fifth Circuit case which even tangentially dealt with the position articulated by the plaintiffs, the court implicitly recognized that personal jurisdiction over one defendant conspirator is not sufficient to grant personal jurisdiction over a non-resident co-conspirator. *See Thomas v. Kadish,* 748 F.2d at 282; *see also Star Technology, Inc. v. Tultex Corp.,* 844 F.Supp. 295, 299 (N.D.Tex. 1993) ("Although Plaintiff accuses [the non-resident defendant] of conspiracy, that alle-

---

Count II of the complaint states two causes of action: (1) conspiracy to commit fraud and (2) conspiracy to market a known unreasonably dangerous product. The elements of fraud under Texas law are "1) a material misrepresentation was made; 2) it was false; 3) the speaker knew it was false when made; 4) the representation was made that it should be acted upon by the other party; 5) the other party acted in reliance on it; and 6) the other party suffered injury." *Jackson v. Speer,* 974 F.2d 676, 679 (5th Cir.1992).

Likewise, conspiracy to market a known unreasonably dangerous product is a tort under Texas law. "[A] defendant engaged in a civil conspiracy can be charged with legal responsibility if that defendant, with others, proceeds in a tortious manner; which is to say, that the defendant has the intention of committing a tort or merely proceeding in a negligent manner." *Rogers v. R.J. Reynolds Tobacco Co.,* 761 S.W.2d 788, 796 (Tex.App.—Beaumont 1988).

gation alone will not support the Court's exercise of jurisdiction *absent minimum contacts.*") (emphasis added). Therefore, plaintiffs' conclusory allegations that the RICO defendants conspired with defendant Upjohn are insufficient to establish personal jurisdiction over the RICO defendants absent minimum contacts with Texas. *See Thomas,* 748 F.2d at 282.

More importantly, this court should not exercise personal jurisdiction over the RICO defendants pursuant to plaintiffs' conspiracy theory because to do so would allow any defendant, who is allegedly a co-conspirator with a person under the court's personal jurisdiction, to be haled into a forum with which that defendant has no contacts. This result would severely undermine the Supreme Court's rationale that the "Due Process clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182 (*quoting World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567).

Finally, plaintiffs' conspiracy theory should not be adopted because it would result in the RICO defendants being haled into this forum simply because of their relationship with defendant Upjohn. This randomness is to be guarded against. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84.

As detailed above, this court does not have personal jurisdiction over the RICO defendants under the first prong of the *International Shoe* analysis. Therefore, it is unnecessary to analyze whether exercising jurisdiction over the RICO defendants would offend traditional notions of fair play and substantial justice.

For these reasons, this court lacks personal jurisdiction over all of the RICO defendants. Therefore, all claims against defendants Leber, Jones, Balter, Uhlenhuth, Straw, Dement, Purpura, Decker, Scheve, and Shook, Hardy & Bacon should be dismissed in accordance with Fed.R.Civ.P. 12(b)(2). Accordingly, it is

**ORDERED** that the motions to dismiss for lack of personal jurisdiction filed by defendants Leber, Jones, Balter, Uhlenhuth, Straw, Dement, Purpura, Decker, Scheve, and Shook, Hardy & Bacon, shall be, and are hereby, **GRANTED.** Further, it is

**ORDERED** that the motions for oral argument on the motions to dismiss shall be, and are hereby, adjudged **MOOT.** Further, it is

**ORDERED** that defendants Shook, Hardy & Bacon, Scheve, Dement, Straw, and Decker's motion to dismiss the complaint, or alternatively, for sanctions due to the plaintiffs' failure to make required disclosures shall be, and is hereby, adjudged **MOOT.**