**Pleas M. NORRIS and William Scott Hodges d/b/a New Age Components, Plaintiff**

v.

**KRYSTALTECH INTERNATIONAL, INC.; Intel Corporation; D & D Specialty Parts; CPU International, Inc.; Oscar Ramos, Individually; Glenn Real d/b/a Logan Trading; and Certain Doe Defendants, Defendants.**

**Civil Action No. 3:97CV643LN.**

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 28, 2000.

Dale Hubbard, Michael S. Allred, David W. Baria, Jackson, MS, for Plaintiffs.

Suzanne N. Saunders, Jackson, Eric D. Isicoff, Miami, FL, Richard L. Jones, Thomas H. Suttle, Jr., Frank W. Trapp, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants CPU International, Inc. and its owner, Oscar Ramos, brought pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss for lack of personal jurisdiction or, in the alternative, for summary judgment pursuant to Rule 56. Plaintiffs Pleas M. Norris and William Scott Hodges d/b/a New Age Components have responded in opposition to the motion

and have also filed an alternative motion to transfer venue in the event this court concludes that it lacks jurisdiction over the movants. The court has considered the parties' memoranda of authorities, together with attachments, submitted in connection with the motions, and for the reasons that follow, concludes not only that it lacks personal jurisdiction over defendants Ramos and CPU, but that summary judgment should be entered for these defendants.

Plaintiff New Age, a Mississippi partnership with its principal place of business in Canton, Mississippi, is engaged in the business of brokering and distributing computer parts and electronic components. Defendant CPU is a Florida corporation with its principal place of business in Florida, and Ramos, its owner, is a resident citizen of Florida which also brokers and distributes computer parts. Plaintiffs filed this lawsuit against a number of defendants, including Ramos and CPU, asserting claims relating to a number of shipments of allegedly defective computer chips which New Age had obtained from distributors in Florida for resale to a New York company, Krystaltech, a former defendant in this lawsuit.

Briefly, according to the complaint, the chips in question were manufactured by Intel Corporation, and thereafter sold to a number of unidentified persons—named as Doe defendants; the Doe defendants fraudulently "re-marked" or relabeled the chips to reflect a higher chip speed and quality than the chips actually possessed; the Doe defendants then sold the chips to Ramos and CPU, which in turn sold them to defendant Logan Trading, which sold them to D & D Specialty Parts, which sold them to plaintiffs for resale to Krystaltech. According to plaintiffs, with the exception of New Age, everyone involved in all of these transactions, including plaintiffs' buyer, Krystaltech, knew the chips were fraudulently labeled. Plaintiffs allege that they were damaged as a result of their purchase and resale of the defective chips, not just financially, but also due to their emotional distress. This court has previously dismissed Krystaltech and Intel from this lawsuit on separate motions by those parties, and now concludes that CPU and Ramos are also due to be dismissed.

Personal jurisdiction may be exercised over a nonresident defendant in a diversity action if the defendant is amenable to service of process under the relevant state long-arm statute and if due process is satisfied under the fourteenth amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616 (5th Cir.1989) (citing *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1265 (5th Cir.1983)). Since Mississippi's long-arm statute is not coextensive with federal due process, an analysis of the scope of the reach of Mississippi's long-arm statute is usually required when a challenge is made to this court's exercise of personal jurisdiction. *Allred v. Moore & Peterson,* 117 F.3d 278, 282 (5th Cir.1997); *see also Cycles,* 889 F.2d at 616 (observing that Mississippi's long-arm statute has a "relatively restrictive scope"). Mississippi's long-arm statute provides in relevant part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss.Code Ann. § 13–3–57 (Supp.1997).

In this case, plaintiffs alleged in their complaint that Ramos and CPU have "conducted a regular and continuous course of business within Mississippi" by engaging

in "[a] regular and continuous course of dealings in the sale and purchase of computer chips and other goods to Plaintiffs in Mississippi; by contracts made and performed in whole or in part in Mississippi ... for the sale, purchase, transportation and delivery of computer chips from said Defendant[s] in Florida to Plaintiffs by shipments received in Jackson, Mississippi; and [o]therwise." They similarly charged that these defendants "made contracts for the sale, transportation and delivery of certain computer chips to the Plaintiffs within the State of Mississippi" which "were performed in substantial part in Mississippi." In response to defendants' motion, plaintiffs have effectively conceded that there is no factual basis for these allegations since Ramos and CPU, as established by Ramos's uncontroverted affidavit, had no contact with plaintiffs or with Mississippi of any sort at any time until *after* plaintiffs had purchased the subject chips from D & D and Logan Trading and resold them to Krystaltech, and *after* plaintiffs had learned, from Krystaltech, that the chips were not as represented by their labeling.[1] Jurisdiction can thus only be properly exercised as to Ramos and CPU if the tort prong of the long-arm statute is satisfied—and plaintiff alleges that it is. Specifically, in addition to the unsupported charge in their complaint that CPU and Ramos did business in Mississippi and contracted with a Mississippi resident, plaintiffs have alleged that these defendants "committed frauds and other torts in whole or in part within Mississippi, and conspired with other co-defendants and other persons including the Doe Defendants to perpetrate frauds

by overt acts within Mississippi, which proximately resulted in damages to Plaintiffs within Mississippi." Plaintiffs have not made a prima facie showing that a tort was committed in whole or in part in Mississippi for purposes of establishing personal jurisdiction, nor, in response to these defendants' alternative request for summary judgment, have they come forward with evidence that these defendants committed any tort against plaintiffs, in Mississippi or elsewhere.

On the subject of fraud, plaintiffs recite in their complaint that the "Vendor Defendants" (which description includes Ramos and CPU) represented to Plaintiffs that the computer chips in question were correctly marked with the minimum microprocessor speed of each computer chip; concealed from plaintiffs the fact that the chips were "re-marks," i.e., had been fraudulently re-labeled or re-marked so as to appear to be a higher speed chip than they actually were; "misrepresented to Plaintiffs that the Vendor Defendants and the Doe Defendants were reliable and trustworthy suppliers of computer chips"; and misrepresented to Plaintiffs "that the computer chips in question were properly valued as computer chips having the processing speed for which they were marked." Despite plaintiffs' allegations in this regard, however, it is an undisputed fact that Ramos and CPU made no representations of any sort whatsoever to the Mississippi plaintiffs (or for that matter made misrepresentations to anyone anywhere or concealed information from anyone regarding the chips). Ramos's and

---

1. That this is so is confirmed by the complaint, which alleges that Krystaltech purchased the subject chips from plaintiffs, who purchased them from D & D, which purchased them from Logan, which purchased them from CPU and Ramos, which purchased them from the Doe defendants, which purchased them from Intel. The complaint recites that when Krystaltech would telephone plaintiffs in Mississippi and ask to be supplied with a certain amount and type of Pentium chips, plaintiffs would then telephone D & D and ask D & D to supply to plaintiffs the indicated amount and type of chips to be purchased, following up with a purchase order, and D & D would then purchase chips from a supplier "later identified as Defendants Ramos [and] CPU." Plaintiffs thus did not contract with or do business with Ramos and CPU, but rather contracted with D & D, and in fact plaintiffs did not even know the identity of D & D's supplier until after they learned of problems with the chips.

CPU's dealings were exclusively with Logan and/or D & D, not the plaintiffs; and there is nothing to suggest that Ramos or CPU misrepresented or concealed anything from either of those parties. The only contact of any sort that Ramos and CPU had with plaintiffs in Mississippi occurred *after* plaintiffs first learned, through Krystaltech, that the chips were not as represented by their labeling; and nothing of a tortious nature occurred in those dealings. From these facts, it is undeniable that Ramos and CPU did not themselves commit the tort of fraud, or any part of such tort, in Mississippi;[2] and neither is there proof that they did so elsewhere.

That leaves plaintiffs' cause of action for conspiracy as the sole potential basis for liability on the part of Ramos and CPU, as well as the sole potential basis for an exercise of jurisdiction by this court over Ramos and CPU. Mississippi recognizes a cause of action for conspiracy, which it has described as " 'a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.' " *Black v. Carey Canada, Inc.,* 791 F.Supp. 1120, 1124 (S.D.Miss.1990) (quoting *Shaw v. Burchfield,* 481 So.2d 247, 255 (Miss.1985)). A review of the complaint herein, though, discloses that plaintiffs' allegations of conspiracy are entirely conclusory, unsupported by any *factual* allegation and thus are not sufficient to state a cause of ac-

tion, *see Guidry v. United States Tobacco Co., Inc.,* 188 F.3d 619, 631–32 (5th Cir. 1999) (while pleading of civil action for conspiracy need only comply with general requirement of Federal Rule of Civil Procedure 8, "a general allegation of conspiracy without a statement of facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to state a cause of action"), and are not a sufficient predicate for an exercise of jurisdiction. *Cf. Thomas v. Kadish,* 748 F.2d 276 (5th Cir.1984) ("neither … conclusory allegations of conspiracy between California defendants based upon their acts in California, nor the alleged effects of this conspiracy in Texas, show[ed] a claim of sufficient minimum. contacts with Texas that would support personal jurisdiction of Texas courts against these defendants for their acts in California"); *J.C. Hawkins v. Upjohn Co.,* 890 F.Supp. 601 (E.D.Tex. 1994) (conclusory allegations that nonresident RICO defendants having no contact with forum state conspired with another defendant which did have minimum contacts with forum state were not sufficient to establish jurisdiction over the nonresident RICO defendants).

For the foregoing reasons, the court concludes that plaintiffs have failed to satisfy their burden to make a prima facie showing that Ramos and CPU committed a tort in whole or in part in Mississippi and the court thus concludes, for this reason,[3] that it lacks personal jurisdiction

---

**2.** This conclusion stands, regardless of whether plaintiffs may have relied on alleged misrepresentations by D & D and/or Logan, and regardless of whether plaintiffs suffered injury in Mississippi as a result of D & D's and/or Logan's alleged misrepresentations. While "[j]urisdiction over any entity, if it exists, must arise out of the entity's contacts with the forum," *Home–Stake Prod. Co. v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1020 (10th Cir. 1990), it has been recognized that "[w]hen one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former," *id.* In his affidavit submitted with plaintiffs' response to defendants' motion, Scott Hodges declares, without elaboration or explanation

of any basis for the assertion, that Logan and D & D were "front companies" for CPU and Ramos. Such a conclusory assertion regarding corporations that have separate governing bodies and at least facially appear wholly unrelated will not suffice to satisfy plaintiffs' burden to make a prima facie showing of jurisdiction.

**3.** In light of this conclusion, the court need not reach the further issue of whether or not an exercise of jurisdiction by this court over Ramos and CPU would offend the requirements of due process. The court would note, though, that it considers it highly unlikely that due process would be satisfied were this court to exert jurisdiction over these defen-

over defendants Ramos and CPU. Furthermore, the bases upon which the court has concluded that it lacks jurisdiction over Ramos and CPU are also bases upon which the court concludes that plaintiffs' claims against these defendants should be dismissed via summary judgment. To reiterate, plaintiffs' conspiracy allegations against Ramos and CPU do not state a cause of action, and there is no evidence in the record, including in plaintiff Hodges' affidavit, that either of these defendants made any representations or misrepresentations at any time of any sort the plaintiffs.

Accordingly, it is ordered that defendants' motion to dismiss for lack of personal jurisdiction or, in the alternative, for summary judgment, is granted. Plaintiffs' alternative motion to transfer venue is therefore denied as moot.

dants. Due process requires both that the nonresident defendant have minimum contacts with the forum state and that the exercise of jurisdiction over him be fair, fairness being judged by reference to certain prescribed factors. *See Bullion v. Gillespie,* 895 F.2d 213, 216 n. 5 (5th Cir.1990) ("The fairness prong for personal jurisdiction requires federal courts to consider (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'; (5) 'the shared interest of the several States in furthering fundamental substantive social policies.' " (citing *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113–15, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 288–90, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980)))). Neither requirement is met with respect to CPU or Ramos. On this point, the court would simply note that in addition to the plaintiffs' failure to adequately allege the existence of a conspiracy, there is no allegation or proof that Ramos or CPU intended that the subject computer chips were to be sold to a Mississippi resident, or knew that they were to be sold to a Mississippi resident, or even that they knew that it was likely that the subject computer chips were to be sold by D & D and/or Logan to anyone in Mississippi. *See J.C. Hawkins v. Upjohn Co.,* 890 F.Supp. 601 (E.D.Tex.1994) (allegations of tort occurring outside forum state which had effects in forum state not sufficient to meet purposeful availment requirement, for "it must be shown that the alleged tortfeasor's intentional actions were purposefully directed toward the forum state and the tortfeasor had knowledge that the brunt of the injury would be felt by a ... resident of the forum state" (citing *Southmark Corp. v. Life Investors,* 851 F.2d 763, 772 (5th Cir.1988))).