Ernest ONDERIK, et al.,
Plaintiffs–Appellants,

v.

Joe P. MORGAN, et al.,
Defendants–Appellees.

Nos. 88–1904, 88–2000.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 17, 1989.

Decided Oct. 10, 1989.

Charles Gottlieb, Joan Odorowski, Thomas R. Eckhardt (argued), Gottlieb & Goren, Detroit, Mich., for plaintiffs-appellants.

Karl R. Overman, Asst. U.S. Atty. (argued), Detroit, Mich., for defendants-appellees.

Before KEITH and MARTIN, Circuit Judges, and GIBBONS, District Judge.[*]

KEITH, Circuit Judge.

Plaintiffs Ernest Onderik ("Onderik") and Dale Richardson ("Richardson"), former employees of defense contractor AM General, brought this wrongful discharge action against defendants General Joe P. Morgan ("General Morgan"), Karl Kabeiseman ("Kabeiseman"), William H. Carroll ("Carroll"), and Frederick J. Condon ("Condon"), all officials of the Defense Logistics Agency ("DLA").[1] Plaintiffs complained that defendants caused them to be terminated, without notice or hearing, from their employment with AM General, and thus, violated their rights to due process. Finding venue improper and personal jurisdiction lacking, the district court dismissed defendants Carroll and Kabeiseman. After finding proper venue and personal jurisdiction with respect to defendants Condon and General Morgan, the district court also dismissed them, invoking the doctrine of quali-

---

[*] The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

1. The Defense Logistics Agency is an organization of the United States Department of Defense.

fied immunity. For the following reasons, we AFFIRM.

## I.

### A.

Onderik was previously employed as a Quality Assurance Specialist by the DLA. On May 22, 1984, in the United States District Court for the Eastern District of Michigan, Onderik pled guilty to the federal criminal charge of receipt and acceptance of gratuities by a public official. *See United States v. Onderik*, No. 84–2051, slip op. (E.D.Mich. May 22, 1984); 18 U.S.C. § 201(g) (Public officials convicted of bribery "shall be fined not more than $10,000 or imprisoned for not more than two years, or both."). Due to Onderik's conviction for acceptance of gratuities from defense contractors, the DLA initiated debarment proceedings against him. The debarment was signed on August 27, 1984 by defendant Kabeiseman, DLA General Counsel:

> [B]ased on the administrative record and the findings herein, Ernest Onderik is hereby debarred effective this date and continuing through 20 June 1987. The debarment is effective throughout the executive branch of the Government unless the head of the agency taking the procurement action or a designee states in writing the compelling reason for continued business dealings between the agency and Mr. Onderik.

Joint Appendix at 13 (quoting *Memorandum of Decision on the Proposed Debarment of Ernest Onderik*, Defense Logistics Agency (Aug. 27, 1984)).

After his debarment and the termination of his employment at DLA, Onderik was hired to be a Supplier Quality Assurance Specialist by AM General, a division of LTV Corporation ("LTV"), at its South Bend, Indiana facility. Because AM General deals almost exclusively in defense contracts, Onderik's job duties at AM General were much like the duties he performed at DLA. Richardson, an AM General Line Supervisor, was a strong advocate for Onderik during the hiring process. James Armour, the AM General Corporate Director of Quality Assurance, approved the hiring of Onderik only after receiving assurances from Richardson that Onderik's debarment arose from a single offense pertaining to $50 placed in a Christmas card.

In October, 1985, AM General, LTV, and DLA representatives attended a meeting, held in a Detroit, Michigan hotel by the Tank Automatic Command ("TACOM"), to discuss a military vehicle project known as the HMMV ("Hummer"). At lunch, General Morgan, the DLA Executive Director of Quality Assurance, informed an LTV representative that because AM General had hired a previously debarred, former DLA employee, DLA was preparing to initiate debarment actions against AM General. After lunch, General Morgan was approached by Zembrzuski, an LTV Vice President, who apologetically explained that he was previously unaware of AM General's hiring of the debarred individual. Zembrzuski thanked General Morgan for bringing the problem to his attention and promised to resolve it.

After the TACOM meeting, Zembrzuski questioned Armour to verify the truth of General Morgan's statement that a debarred individual had been hired by AM General. After Armour admitted that he had hired Onderik, Zembrzuski strongly suggested that Armour had exercised poor judgment in making that decision. After Richardson showed Armour a document indicating that Onderik, as a DLA employee, had accepted gratuities on four occasions, Armour terminated Onderik's employment with AM General on October 22, 1985. In an effort to resolve the Onderik matter, Richardson telephoned several DLA attorneys and officials in Detroit, Michigan; Cleveland, Ohio; Arlington, Virginia; and Washington, D.C. Because Richardson had grossly overstepped his bounds as an AM General Line Supervisor by making these unauthorized contacts with DLA personnel, Armour terminated Richardson on October 23, 1985.

### B.

Plaintiffs filed a complaint against the DLA on February 5, 1987. After finding

that sovereign immunity bars suits for damages against the United States arising directly from constitutional violations, the district court entered an order dismissing plaintiffs' complaint against the DLA on April 6, 1988. Plaintiffs then filed, on April 22, 1988, an amended complaint against individual defendants General Morgan, Kabeiseman, Carroll, and Condon. Plaintiffs alleged that defendants violated their rights to due process because plaintiffs' wrongful discharge—without notice, cause, hearing or proper investigation—resulted from defendants' pressure and threats of debarment against AM General.

On May 13, 1988, defendants moved to dismiss plaintiffs' amended complaint. On July 26, 1988, the district court entered an order dismissing plaintiffs' amended complaint, finding: first, that personal jurisdiction and venue in the Eastern District of Michigan were proper as to defendants Condon and General Morgan; second, that personal jurisdiction and venue were improper as to defendants Carroll and Kabeiseman; and third, that defendants Condon and General Morgan were protected by the doctrine of qualified immunity.

Plaintiffs filed a notice of appeal on August 24, 1988. Plaintiffs did not, however, appeal the dismissal of defendants Kabeiseman and Carroll. On September 26, 1988, defendants Condon and General Morgan filed a cross appeal, alleging that the district court erred by not dismissing them for lack of personal jurisdiction and improper venue.

## II.

### A.

 In their cross appeal, defendants argue that the district court erred in finding venue proper in the Eastern District of Michigan. We disagree. Given that plaintiffs' claim arose in the Eastern District of Michigan and that the weight of defendants' contacts were made in that forum, the district court made a proper finding of venue.

Venue is proper in the judicial district "in which the claim arose." 28 U.S.C. § 1391(b). More specifically, venue is appropriate in "any district in which a substantial part of the acts, events or omissions occurred that gave rise to the claim for relief." *Sutain v. Shapiro and Lieberman,* 678 F.2d 115, 117 (9th Cir.1982) (citations omitted). In *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court posited a "weight of the contacts" test to determine the propriety of a finding of venue:

> [A] plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Leroy,* 443 U.S. at 185, 99 S.Ct. at 2717.

The unique facts of the present case clearly indicate that plaintiffs' claim arose in the Eastern District of Michigan. Plaintiffs argue that their employment with AM General was terminated due to General Morgan's discussions with LTV officials at the TACOM meeting in Detroit, Michigan. Plaintiffs' allegation is supported by AM General Vice President Zembrzuski's October 22, 1985, letter to General Morgan. Writing from his office in Livonia, Michigan, Zembrzuski stated that AM General had taken "prompt action" to resolve the personnel problem. Zembrzuski's "prompt action" was to initiate the termination of both Onderik and Richardson, who were employed by the AM General Division of LTV, in Detroit, Michigan. In addition, defendant Condon, DLA's counsel in Cleveland, Ohio, had been previously notified of Onderik's employment with AM General by Michael O'Meara, Chief of Quality for Defense Contract Administration Services. O'Meara also works in Detroit, Michigan. Because Condon received several documents discussing Onderik from O'Meara, the facts justified a rejection of defendants' improper venue argument with respect to Condon and General Morgan. Thus, because plaintiffs' claim arose in the forum and the weight of defendants' contacts

were made in the forum, we are persuaded that the district court properly found venue in the Eastern District of Michigan.

### B.

█ In their cross appeal, defendants also argue that the district court erred by exercising personal jurisdiction over them. We disagree. The order of the district court was clearly justified by the conduct of the defendants and their connection with the forum state of Michigan.

Where plaintiffs bring an action pursuant to a federal law that does not provide for service of process, service on nonresident defendants is governed by the state statute. *See Handley v. Indiana & Michigan Electric Co.*, 732 F.2d 1265, 1268 (6th Cir.1984). In Michigan, defendants are subject to personal jurisdiction if they: first, conduct "any business within the state"; or second, engage in "the doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort." Mich.Comp.Laws § 600.705(1), (2). To determine whether personal jurisdiction may be exercised, consistent with due process, this court established a three-part test in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir.1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine*, 401 F.2d at 381. Reviewing the case at bar under the *Southern Machine* criteria, we conclude that personal jurisdiction may reasonably be exercised over the defendants in Michigan.

First, plaintiffs, two Michigan-based employees of AM General, allege that defendants caused them to be terminated by their employer. To secure additional information about Onderik's criminal conviction,

debarment and subsequent employment, Condon made numerous telephone and mail contacts with O'Meara, a Michigan-based federal employee. Moreover, at the TACOM meeting in Detroit, Michigan, General Morgan provided LTV officials with information about a "debarred individual" employed by AM General. As the district court noted, this information could have been used against both plaintiffs and resulted in the loss of their Michigan-based employment. Thus, because defendants allegedly caused this consequence to occur within the state of Michigan, we hold that the first *Southern Machine* criterion has been satisfied.

The second *Southern Machine* requirement states that the cause of action must arise from defendants' actions in the forum state or "that the cause of action, of whatever type, have a substantial connection with the defendant[s'] in-state activities." 401 F.2d at 384 n. 27. In the case at bar, the defendants' in-state activities that were substantially related to the plaintiffs' cause of action include: first, General Morgan's in-person, Michigan-based, discussions with LTV officials concerning the debarred individual; second, General Morgan's subsequent and related correspondence with Zembrzuski, a Michigan-based officer of AM General; and third, Condon's investigation of the past misdeeds of Onderik through correspondence and telephone contacts with O'Meara, a Michigan-based federal employee. Based on the activities of the defendants, we hold that the second *Southern Machine* requirement was satisfied.

The final *Southern Machine* criterion states that the consequences caused by the defendants must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendants reasonable. In the present case, defendants have presented no compelling justification which should preclude the exercise of personal jurisdiction over them in Michigan. Because AM General does a substantial amount of business in Michigan, and because both plaintiffs were employed at one of AM General's Michigan

facilities, defendants' role in plaintiffs' discharge could have a direct effect on the stream of commerce in Michigan. Thus, Michigan had a substantial interest in resolving this case—the provision of a forum to resident plaintiffs, as well as non-resident defendants who purposely availed themselves of acting in and causing consequences in the forum state. Because we conclude that all three of the *Southern Machine* tests have been satisfied, we hold that defendants Condon and General Morgan are subject to personal jurisdiction in the state of Michigan.

### C.

█ Plaintiffs argue, on appeal, that the district court erred in dismissing their complaint against defendants Condon and General Morgan as barred by the doctrine of qualified immunity. We disagree. Because the defendants did not violate clearly established federal law or knowingly anticipate that their conduct would give rise to constitutional claims, defendants retain the protections of qualified immunity.

To minimize the social costs that would result from allowing damage suits against federal officials acting within the scope of their employment, the Supreme Court has granted such officials qualified immunity from suit. *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). To lose the protections of qualified immunity, the federal officials must have violated clearly established law. *See Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). Moreover, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). If federal officials should have known that their conduct would give rise to personal liability for breaching plaintiffs' constitutional rights, then the officials lose the protections of qualified immunity. *See Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040.

Plaintiffs' allegations in the complaint should be used to determine the appropriateness of defendants' qualified immunity defense. *See Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. In the case at bar, plaintiffs complained that defendants violated their constitutional rights by demanding and ordering AM General to fire them. The district court found, however, that plaintiffs' allegations were unsubstantiated:

> The evidence which has been gleaned from this record suggests only that the Government agency—that is, the representatives from the Defense Logistics Agency—informed the Plaintiffs' employer that they had undesirable persons working for them and, taking the evidence in the light most favorable to the Plaintiffs, that there was a hint that they should be fired. There is a question as to whether this allegation, if taken as true, constitutes a constitutional tort.... In looking at the complaint, [it is not clear] that the Government officials violated any clearly established law when they allegedly informed a Government contractor that its employee had [an unsavory] past.

Joint Appendix at 24–25 (quoting *Onderik v. Defense Logistics Agency*, C.A. No. 87–CV–70416–DT (E.D.Mich. July 12, 1988) (ruling on motion to dismiss)).

Although it is quite possible that defendant Condon and General Morgan's conduct caused AM General to discharge the plaintiffs, there is no evidence to indicate that the defendants violated a federal law or knowingly committed a constitutional tort. Acting as counsel to the DLA, Condon merely investigated Onderik's past, uncovering his criminal conviction, debarment, and subsequent employment by AM General. Contrary to plaintiffs' allegations, General Morgan merely provided LTV officers with accurate information indicating that AM General was employing a previously debarred individual and that DLA was planning to initiate debarment proceedings against AM General. Thus, because plaintiffs were unable to overcome the qualified immunity defense of defendants Condon and General Morgan, we are persuaded that the district court correctly dismissed these remaining defendants.

Accordingly, the judgment of the district court is AFFIRMED.