## GENERAL MOTORS CORPORATION and Adam Opel AG, Plaintiffs,

v.

## Jose IGNACIO LOPEZ DE ARRIORTUA, et al., Defendants.

### No. 96–71038.

United States District Court, E.D. Michigan, Southern Division.

Nov. 26, 1996.

Eugene Driker, Detroit, MI, for plaintiffs.

James P. Denvir, Larry S. Gondelman, Anthony T. Pierce, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, Howard J. Trienens, David T. Pritikin, Thomas D. Rein, Sidley & Austin, Chicago, IL, William A. Sankbeil, Kerr, Russell & Weber, P.L.C., Detroit, MI, for defendants.

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION; DENYING DEFENDANTS' JOINT MOTION TO DISMISS BASED ON FORUM NON CONVENIENS OR TO STAY PENDING RESOLUTION OF CIVIL SUIT IN GERMANY; AND DENYING DEFENDANTS' JOINT MOTION TO DISMISS FOR LACK OF STANDING OR IN THE ALTERNATIVE TO JOIN INDISPENSABLE PARTIES

EDMUNDS, District Judge.

This matter came before the court at a hearing on October 16, 1996 on the following motions: Defendants' motions to dismiss for lack of personal jurisdiction; Defendants' joint motion to dismiss based on forum non conveniens or to stay pending resolution of a civil suit in Germany; and Defendants' joint motion to dismiss for lack of standing or in the alternative to join indispensable parties. For the reasons set forth below, Defendants' motions to dismiss are denied.

## I. Facts

Plaintiffs, General Motors Corporation ("GM") and Adam Opel AG ("Opel"), brought suit against Defendants alleging theft of trade secrets and conspiracy. GM is an American corporation and Opel is a German corporation wholly owned by GM. Defendants include:

1. Volkswagen AG, a German corporation ("VW")

2. Volkswagen of America, Inc., wholly owned by Volkswagen AG ("VWOA")

3. The "Lopez Group," including the following individuals who worked at GM or its subsidiaries until March of 1993 when they left and joined VW:

Jose Ignacio Lopez, a former executive at GM Espana, Opel, and GM (Europe) AG. On February 1, 1993 he became group vice president of GM. Subsequently, on March 10, 1993, he resigned from GM and moved to Germany. On

March 16, he joined VW and was appointed to its management board.

Jose Manuel Gutierrez, executive director of purchasing with GM Espana (based in Spain). He quit on March 22, 1993. He moved to Germany and joined VW as a division head.

Jorge Alvarez, a platform manager for the S–Car and the O–Car for Opel when he quit on March 22, 1993. He then joined VW's subsidiary SEAT, in Spain, as a purchasing director.

Rosario Piazza, a sourcing specialist for Opel when he quit on March 22, 1993. He then joined VW in Spain as head of forward sourcing.

Hugo Van der Auwera, executive director of worldwide purchasing, metallic commodity group, for GM Continental (based in Belgium) when he quit on March 22, 1993. He joined VW as a division head.

Francisco Garcia–Sanz, executive director of worldwide purchasing, electrical commodity group, for GM when he quit on March 22, 1993. He joined VW as a division head.

Andries Versteeg, manager-European liaison, advance purchasing and global sourcing, for GM when he quit on March 22, 1993. He joined VW as a division head.

Willem Admiraal, an employee of GM when he quit on March 22, 1993. He then joined VW. He is married to Lopez's daughter, Irene.[1]

4. The "VW Group" including:

Ferdinand Piech, the chairman of the board of VW;

Jens Neumann, a member of VW's management board and member of the VWOA board;

Jaero Wicker, a VW employee in Wolfsburg and later, when Lopez was hired by VW, an administrative assistant to Lopez; and

H.W. Lytle, executive director of human resources for VWOA.

Plaintiffs allege that at least as early as August 1992 until March 1993, while Lopez was a high level GM executive, Lopez secretly communicated with VW representatives and agreed to leave GM and join VW. He agreed to bring confidential business plans and trade secret information with him. Lopez worked with the other Lopez Group Defendants to secretly collect confidential documents, transparencies, and computer diskettes including: listings of GM and Opel components by worldwide supplier, price, terms, conditions, and delivery schedules (including a copy of GM's Product Purchasing System (PPS) and GM Europe's European Purchasing Optimization System (EPOS)); plans for "Plant X," the factory of the future; future auto plans to the year 2003; and future strategies for purchasing.

In March of 1993, the Lopez Group Defendants all left GM and Opel to join VW where they were paid significantly higher salaries. They allegedly took over 20 cartons of stolen documents with them. Plaintiffs allege that the Lopez Group immediately copied the documents and entered them into VW computers, a process which took almost a month. To cover up the theft, the Defendants then shredded the documents with a shredder borrowed from VW's plant in Kassel.

In June of 1993, German police discovered four boxes of trade secret documents in the home of Lopez's associates. German police also found GM and Opel documents at Lopez's home and at VW. Complaint para. 202–211. For example, German police seized documents coded "Plant B" from various VW locations. These documents were identical to Opel's confidential Plant X material, except that the Opel logo was removed and the VW logo was inserted. Complaint para. 195.

On July 9, 1993, Alvarez sent a letter to Gutierrez suggesting that they come up with an explanation for having the documents. Paragraph 198 of the complaint quotes the letter (translated from Spanish) as follows:

Dr. V. Hulsen [VW's general counsel] is of the opinion that we should have an explanation for this matter.... Of the documents found, there are some that I would

---

1. Defendants allege that Alvarez, Piazza, Garcia–Sanz, Versteeg, and Admiraal all had employ- ment contracts with Opel in Germany, not with GM in the U.S.

have no reason to possess, which could get us into trouble.... [I]f we take the offensive by saying that some documents weren't in the box, and it winds up that the prosecutor's office plans to say that the documents found aren't secret ... it would wind up that someone would have had to put the nonsecret documents in the boxes, something pretty strange. On the other hand, if it winds up that the business about the prosecutor's office saying that there weren't any secrets is all a hoax and they charge us, we should already have stated that some of the documents had been placed in my house by Opel. If we say it only after the prosector's office charges us, it will be a little late.

The complaint alleges that Defendants falsely stated that they did not possess any documents. Lopez told reporters at a news conference on June 14, 1993, that the Lopez Group did not take anything. Complaint para. 196. On July 17, 1993, Piech also denied that the Lopez Group had taken anything. Complaint para. 195 & 197. On or around July 28, 1993, Piech publicly claimed that the documents the German police found in Alvarez's home had been planted by Opel. Complaint para. 199.

On August 13, 1993, VW hired KPMG Peat Marwick, the German branch of the accounting firm, to conduct an investigation of the activities of the Lopez Group. In October of 1993, KPMG delivered a report to VW. VW requested that the report be abridged, and the abridged version was released on November 26, 1993. VW claimed that the report exonerated VW. Plaintiffs claim that the report, both in its complete and abridged forms, confirms Plaintiffs' allegations of wrongdoing. The report states that GM documents were brought to VW, copied, and shredded. Complaint para. 214–219.

These circumstances resulted in both a criminal case and a civil case against the Defendants in Braunschweig, Germany. The German civil case was initiated by VW and the Lopez Group to enjoin GM, Opel, and GM Espana from interfering with VW's employment of GM's former employees. GM, Opel, and GM Espana counterclaimed,[2] based on the actions which are the basis of the complaint here. The counterclaim seeks information regarding the documents taken and seeks the return of the documents. It also requests injunctive and declaratory relief relating to the employment by VW of the Lopez Group. The counterclaim also requests a declaratory judgment that VW and the Lopez Group are liable for any damage that arises from VW's employment of the Lopez Group and use of GM and Opel trade secrets. That is, the counterclaim seeks a declaratory judgment of liability, not damages.[3] The German civil case is currently stayed, at the request of GM, pending the investigation of the German criminal action.

On March 7, 1996, Plaintiffs filed this U.S. civil suit. Their complaint alleges the following counts (against all Defendants unless otherwise specified):

1. Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) & 1964(c), based on the predicate violations of wire fraud, 18 U.S.C. § 1343; interstate and foreign travel to aid racketeering, 18 U.S.C. § 1952; tampering with witnesses, 18 U.S.C. § 1512; transportation and receipt of stolen goods, 18 U.S.C. §§ 2314 & 2315

2. Conspiracy to Violate RICO, 18 U.S.C. §§ 1962(d) & 1964(c)

3. Lanham Act, 15 U.S.C. § 1126

4. Copyright Act, 17 U.S.C. § 101 et seq.

5. Fraud, against the Lopez Group Defendants

6. Breach of Fiduciary duty, against Lopez Group Defendants (excluding Lopez)

7. Conversion

8. Misappropriation of Trade Secrets

9. Conspiracy

10. Unjust Enrichment, against VW and VWOA.

**2.** Defendants characterize this as a permissive counterclaim. Buxbaum second supplemental affidavit.

**3.** GM and Opel asked that the German court permit them to later request damages when the amount can be specified. Defendants' Exhibit 6, Buxbaum Aff.

Defendants' actions allegedly caused Plaintiffs enormous damage. GM and VW are the two largest car sellers in the Western European market. VW allegedly has used and continues to use the trade secret information to reduce its costs substantially and to increase its market share.

Four motions to dismiss for lack of personal jurisdiction were filed on behalf of the following groups of Defendants: 1) Lopez; 2) Garcia–Sanz, Van der Auwera, Admiraal, Gutierrez; 3) Piech and Neumann; and 4) VW. Defendants also filed a joint motion to dismiss based on forum non conveniens or to stay pending resolution of the civil suit in Germany. In addition, Defendants filed a joint motion to dismiss for lack of standing or, in the alternative, to join indispensable parties. For the reasons set forth below, Defendants' motions are denied.

## II.  Analysis

### A.  Personal Jurisdiction

Before deciding any of the Defendants' other motions to dismiss, the court must first decide the Defendants' motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *See Consolidated Rail Corp. v. Grand Trunk W. R.R. Co.,* 592 F.Supp. 562 (E.D.Pa.1984) (holding that court must resolve personal jurisdiction issue before ruling on matters committed to court's discretion).

Plaintiffs contend that this court has limited personal jurisdiction. The burden of proving that the court has personal jurisdiction on a defendant is borne by the plaintiff. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)). A plaintiff is merely required to make a prima facie showing. *Serras v. First Tennessee Bank Nat. Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989). "[T]he pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff." *Theunissen,* 935 F.2d at 1459.

In a federal question case, when a plaintiff files suit under a federal law which does not provide for service of process, service on a nonresident defendant is governed by the long arm statute of the state in which the federal district court sits. *Onderik v. Morgan,* 897 F.2d 204, 208 (6th Cir.1989); *L.H. Carbide Corp. v. The Piece Maker Co.,* 852 F.Supp. 1425, 1431 (N.D.Ind.1994). Thus, the Michigan long arm statute applies.

The Michigan long arm statute provides for limited personal jurisdiction over individuals and corporations if the action arises out of the transaction of "any business" within the state or the "doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." Mich. Comp.Laws Ann. § 600.705 (individuals) & 600.715 (corporations). The long arm statute is broadly construed. The "arising out of" requirement is satisfied if the cause of action was "made possible by" or "lies in the wake of" the defendant's contact with the forum. *Lanier v. American Bd. of Endodontics,* 843 F.2d 901, 909 (6th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). Further, "the transaction of any business ... includes 'each' and 'every' ... [i]t comprehends the slightest." *Serras,* 875 F.2d at 1217 (quoting *Sifers v. Horen,* 385 Mich. 195, 199 n. 2, 188 N.W.2d 623, 624 n. 2 (1971)).

Even though the language of the long arm statute has been interpreted broadly, the application of statute is limited by constitutional concerns of due process under the Fourteenth Amendment. *Onderik,* 897 F.2d at 208; *Theunissen,* 935 F.2d at 1459. To exercise personal jurisdiction over a defendant, the defendant must have had minimum contacts with the forum state so that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In determining whether a nonresident defendant has had sufficient contacts to support personal jurisdiction, three criteria apply:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the

defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968).

### 1. Minimum Contacts

■ Under the majority view, for the purpose of determining limited personal jurisdiction, minimum contacts are measured at the time that the underlying acts took place. *Nielsen v. Sioux Tools, Inc.,* 870 F.Supp. 435, 440 (D.Conn.1994). Thus, it follows that personal jurisdiction cannot be defeated by leaving the state where the underlying acts took place. *Steel v. United States,* 813 F.2d 1545, 1549 (9th Cir.1987).[4]

■ The first factor, purposeful availment of the privilege of acting in the forum or causing a consequence in the forum, often is contested when a defendant's contacts with the forum consist of only phone calls or written correspondence. Simply contacting someone in the forum by phone, for example, cannot establish jurisdiction. *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1119 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994). To determine if the nonresident purposefully availed himself of the privilege of acting in the forum or caused a consequence in the forum, the court must examine the content of the communication. "It is the 'quality' of such contacts ... that determines whether they constitute purposeful availment." *Id.*

■ If the nonresident conducted business, committed a tort, or furthered a tortious scheme in the forum, even by way of phone call or written correspondence to the forum, personal jurisdiction is appropriate. For example, in *Onderik v. Morgan,* 897 F.2d 204 (6th Cir.1989), the Sixth Circuit held that personal jurisdiction was proper over a defendant whose only contact with Michigan was by telephone and correspondence. The plaintiffs' wrongful termination suit named two nonresidents who allegedly provided information to the employer leading to plaintiffs' termination. One of the nonresident defendants never set foot in Michigan. He conducted an investigation by phone and by letter. Based on this alone, personal jurisdiction was proper.

■ Further, a defendant may reach into a forum as part of a scheme to defraud. In *General Envtl. Science Corp. v. Horsfall,* 753 F.Supp. 664 (N.D.Ohio 1990), the plaintiff was an Ohio corporation that brought a suit under RICO and tort law against a Swiss corporation, Swiss citizens, and others. The plaintiff alleged that the defendants reached into Ohio to acquire plaintiff's trade secrets by fraud, deception, and theft. One way defendants reached into the forum was by entering into and then repudiating a contract with the plaintiff. The court found that it had personal jurisdiction over the defendants. *See also FMC Corp. v. Varonos,* 892 F.2d 1308 (7th Cir.1990) (holding minimum contacts satisfied where foreign manager's contacts with the forum consisted of fraudulent telexes and faxes which were part of her scheme to defraud).

Under the second factor, the cause of action must arise from the defendant's contacts with the forum. "An action will be deemed not to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy." *Creech v. Roberts,* 908 F.2d 75, 80 (6th Cir.1990), *cert. denied,*

---

**4.** Two courts have ruled that in examining limited personal jurisdiction a court should take the additional step and consider where a defendant resides when suit is served. *Lachman v. Bank of La.,* 510 F.Supp. 753, 757 (N.D.Ohio 1981); *Connecticut Artcraft Corp. v. Smith,* 574 F.Supp. 626, 630 (D.Conn.1983). The court is persuaded that it should not take the "additional step" of examining the Defendants' residence at the time of suit. As the *Nielsen* court explained:

This additional step has never been recognized by the Supreme Court, and has been soundly

rejected in other jurisdictions. Although a contrary result was reached in [*Connecticut* and *Lachman*], in neither of these cases was the issue squarely before the court. Moreover, neither court provided any substantive analysis.

*Nielsen,* 870 F.Supp. at 440 (citations omitted). Further, to look at residence at the time of suit flies in the face of the public policy that a wrongdoer should not be permitted to flee.

499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991). In *Creech,* the court found personal jurisdiction existed in Ohio over an Oklahoma medical center in a malpractice action. The medical center was affiliated with the Oral Roberts Evangelical Association (OREA), which broadcast ads in Ohio soliciting patients for the center. The medical center's only contact with Ohio was the advertisements. Because the ads brought the plaintiff to the medical center, the court held that the malpractice action "arose from" the medical center's activities in the forum. When the purposeful availment and arising under factors of the *Southern Machine* test are satisfied, only the unusual case will not satisfy the third factor of a "substantial enough connection with the forum to make the exercise of jurisdiction reasonable." *Creech,* 908 F.2d at 80.

Some courts also recognize the theory that personal jurisdiction can be founded on conspiracy grounds. That is, because the acts of a conspirator in furtherance of the conspiracy may be attributed to the other members of the conspiracy, a nonresident coconspirator may be sued for the acts of the resident coconspirators. *Textor v. Board of Regents,* 711 F.2d 1387, 1392 (7th Cir.1983); *Dooley v. United Techs. Corp.,* 786 F.Supp. 65 (D.D.C. 1992).[5] *Contra Hawkins v. Upjohn Co.,* 890 F.Supp. 601, 608–09 (E.D.Tex.1994) (refusing to recognize conspiracy theory as basis for personal jurisdiction).

Totally unsupported conspiracy allegations do not support jurisdiction. *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1237 (6th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981). At the same time, it is not fair to require a plaintiff to plead specific facts proving conspiracy before discovery.

> [T]his Court refused to force plaintiff to produce evidence concerning the foreign defendants' alleged conspiratorial activity. Such activity constitutes the jurisdictional contact with this forum. To put plaintiff to

this task prior to discovery would be wrong for several reasons. First, the jurisdictional issue is so intertwined with the merits of the case that meaningful jurisdictional discovery, in this instance, would be equivalent to full-blown pretrial discovery. Conspiracy is an activity which by its very nature is secretive. Therefore, in many cases it is only through discovery that one can root out its existence. Second, any relevant evidence is most likely to be under defendants' control. Therefore, it would be unfair to plaintiff to require proof of forum contacts at this early stage.

*Thompson Trading Ltd. v. Allied Lyons PLC,* 124 F.R.D. 534, 535 (D.R.I.1989).

The Lopez Group Defendants assert that the court lacks personal jurisdiction because most of the actions alleged in the complaint took place outside of the United States. Viewing the complaint in a light most favorable to Plaintiffs, Defendants' argument lacks merit. First, the Lopez Group Defendants purposefully availed themselves of the privilege of acting in the forum and caused consequences in the forum. They lived and worked in the United States when they allegedly planned the theft of the documents and gathered the documents for transport to Europe. Lopez planned the conspiracy here in Michigan, took copies of documents here, gave documents to an accomplice here, and organized the transportation of documents from here to Germany. See, e.g., Complaint para. 4–6, 70, 75–77, 113, 132, 144. Like Lopez, the other Lopez Group Defendants were living and working here when they conspired and stole trade secrets. Complaint para. 32–33, 112, 113, 120, 153 (Gutierrez), 38 (Van der Auwera), 40, 77 (Garcia–Sanz), 44, 113 (Admiraal), 6, 23, 25, 46, 128 (all). Plaintiffs filed affidavits in support of these allegations. *See, e.g.,* Plaintiff's Ex. 1, Boynett Aff.; Ex. 3, Irvin Aff.; Ex. 6, Knierim Aff.; Ex. 7, Mynar Aff.; Ex. 8, Perriton Aff.; Ex. 10, Taylor Aff.; Ex. 11, Turski Aff.[6]

---

**5.** The Sixth Circuit has never had the occasion to apply this theory.

**6.** The Lopez Group Defendants (excluding Lopez) also claim that they cannot be held liable for copying documents because Lopez directed them

to do so. It is not relevant that Lopez could have authorized them to copy them for legitimate reasons, as the gravamen of the complaint is that they copied the documents for the illegitimate purpose of stealing them. These same defen-

■ Second, Plaintiffs' cause of action arises from Defendants' activities in Michigan. Defendants' activities in Michigan are substantially related to the operative facts of this controversy. *Creech*, 908 F.2d at 80. Plaintiffs' allegations of violations of RICO, the Copyright Act, the Lanham Act, fraud, breach of fiduciary duty, conversion, misappropriation of trade secrets, conspiracy, and unjust enrichment all stem from the alleged theft of trade secrets that occurred, at least in part, in Michigan. Finally, the exercise of jurisdiction over the Defendants is reasonable, due to the substantial connection between the acts of the Defendants and the consequences caused by the Defendants in this forum.[7]

■ Defendants Piech and Neumann, principals at VW, claim that the court lacks personal jurisdiction over them because they deny asking the Lopez Group to steal documents and their only contact with the Lopez Group was by telephone and fax. The court rejects this claim as well. Piech and Neumann's telephone and fax contacts with the forum were allegedly offers of inflated salaries to the Lopez Group to induce them to come to VW and to bring GM trade secrets. Complaint para. 18, 20, 54, 60, 61, 97, 115, 141, 144. Thus, Piech and Neumann allegedly furthered their tortious scheme through their contact with the forum and intentionally caused consequences in the forum. Thus, Piech and Neumann had minimum contacts with the State of Michigan.

Piech and Neumann also claim that personal jurisdiction should not be exercised because the complaint alleges effects in Germany and fails to allege substantial effects in Michigan. They argue that a defendant

must have had knowledge that his conduct would have an effect on the forum, that "the brunt of the injury would be felt" in the forum. *Hawkins*, 890 F.Supp. at 608. This is disingenuous. The complaint alleges the theft of trade secrets from an American corporation that took place in Michigan pursuant to a conspiracy by and on behalf of Piech and Neumann in concert with then Michigan residents, the Lopez Group. Certainly, the alleged actions of Piech and Neumann had effects in this forum, which Defendants would be expected to anticipate.

■ The court also has personal jurisdiction over Piech and Neumann under the conspiracy theory of jurisdiction. Plaintiffs make specific allegations that the Lopez Group conspired to steal the documents on behalf of VW, VWOA, Piech, and Neumann, and that Piech and Neumann planned and participated in the conspiracy. For example, the complaint states:

Piech and others in the VW Group decided to target Lopez and induce him to come to VW, bringing with him the employees and trade secrets of plaintiffs needed to enable VW to quickly reduce its costs.

In furtherance of this scheme, beginning in August 1992 and perhaps earlier, the VW Group initiated a series of contacts with Lopez to explore his willingness to defect to VW.

Complaint para. 50–51. Paragraph 61 alleges, "Piech and Lopez also discussed Lopez bringing with him to VW the other members of the Lopez Group, because of their access to plaintiffs' trade secrets. Piech assured Lopez they would also be brought on board

---

dants also argue that there is no personal jurisdiction over them with respect to the claim for breach of fiduciary duty under their employment contracts (count 6 of the complaint) because their employment contracts were not with GM in Detroit, but were with European subsidiaries of GM (Opel, a German corporation; GM Espana, a Spanish corporation; and GM Continental, a Belgian corporation). This point also is irrelevant; Plaintiffs are suing in tort, not in contract. As explained above, some of the acts underlying each count of the complaint happened here, in this forum.

**7.** With respect to Plaintiffs' RICO claim, the minimum contacts analysis focuses on Defendants contacts with the United States, not just with the State of Michigan. *L.H. Carbide Corp. v. The Piece Maker Co.*, 852 F.Supp. 1425, 1431 (N.D.Ind.1994) (for federal question case where federal statute authorizes nationwide service of process, due process under Fifth Amendment applies and court examines whether defendant had sufficient contacts with entire United States). RICO provides for nationwide service of process. 18 U.S.C. § 1965. Defendants' contacts with Michigan satisfy due process under the RICO claim.

at excessive salaries." When the thefts were discovered, Piech allegedly participated in the coverup. Complaint para. 179, 182, 189, 197–99. The complaint specifically names Neumann as a participant in negotiating Lopez's employment by VW. *See, e.g.,* complaint para. 107. Neumann also arranged for the stolen documents to be transported to VW. "[O]n March 16, 1993, Neumann ordered a VW corporate jet to Barcelona in order to pick up the confidential documents that the Lopez Group had been secreting in Spain in anticipation of their defection to VW." Complaint para. 156. Thus, under the conspiracy theory of jurisdiction, the acts of the Lopez Group in Michigan may be attributed to their alleged coconspirators, Piech and Neumann. The allegations of the complaint are specific enough to withstand a motion to dismiss. As the court noted in *Thompson,* "it would be unfair to plaintiff to require proof of forum contacts at this early stage" because the forum contacts consist of secret conspiratorial activity. 124 F.R.D. at 535.

The court also has personal jurisdiction over VW. VW "caused a consequence" in the forum, resulting in an action for tort, and thus is subject to personal jurisdiction. VW provided money, transportation, copying, and shredding facilities. *See, e.g.,* complaint para. 47 (lucrative salaries), 156 (VW jet transported documents), 162 (computer input and copying of trade secrets at VW facility). 170 (VW equipment used for shredding). VW is also subject to personal jurisdiction under the Michigan long arm statute because it transacted business in

Michigan when it negotiated Lopez's employment contract. *Serras,* 875 F.2d at 1217 (transacting business under the Michigan long arm statute means even the slightest).[8] In addition, Plaintiffs' allegations against VW are on some respects derivative of their allegations against Piech and Neumann. Because there is jurisdiction over Piech and Neumann, there is jurisdiction over VW.[9]

In sum, in this case the *Southern Machine* factors are satisfied. It is consistent with the Michigan long arm statute and with the concerns of due process to exercise limited personal jurisdiction over all of the Defendants.

### 2. Reasonableness

When personal jurisdiction is sought over alien defendants, the court must also examine the reasonableness of exercising jurisdiction. *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 115, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1986). In order to determine whether the exercise of jurisdiction would be reasonable, courts must look at the following factors:

1. the burden on the defendant;
2. the interests of the forum;
3. the interests of the plaintiff;
4. the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction.

*Id.* at 115, 107 S.Ct. at 1033. In *Asahi,* the defendant corporation had no nexus with the forum other than the knowledge that the goods it manufactured and sold outside the U.S. would reach the forum state. Thus, it

8. Further, the ownership of a subsidiary that does business in the forum is a factor to be considered in determining minimum contacts. *Third Nat'l Bank v. WEDGE Group, Inc.,* 882 F.2d 1087, 1090 n. 1 (6th Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). VW owns 100% of VWOA, which does business in Michigan.

9. Plaintiffs also argue that VW is collaterally estopped from challenging personal jurisdiction because courts have found in prior litigation that VW exercises substantial control over VWOA. VW's control over VWOA, a resident corporation, meets the minimum contacts test. *Schlunk v. Volkswagenwerk Aktiengesellschaft,* 145 Ill.App.3d 594, 105 Ill.Dec. 39, 109, 503 N.E.2d 1045, 1115 (1986), *aff'd,* 486 U.S. 694, 108 S.Ct. 2104, 100

L.Ed.2d 722 (1988) (upholding process on VW by serving VWOA). However, Plaintiffs have not shown that the relationship between VW and VWOA is the same now as it was when *Schlunk* was decided. Thus, it cannot be determined from the record whether collateral estoppel applies.

Plaintiffs also argue that VW is subject to personal jurisdiction because it has registered trademarks in the U.S. and has filed suits here to protect its trademarks. This argument is not supported by case law. *See Williams v. Canon, Inc.,* 432 F.Supp. 376, 380 (C.D.Cal.1977) (no personal jurisdiction over Japanese parent despite the use of trademarks by its American subsidiary).

was not reasonable to exercise personal jurisdiction over it.

■ Defendants argue that they reside outside the United States, as do most of the potential witnesses and documents. Further, Defendants will not be able to compel the attendance of nonparty witnesses abroad, nor will they be able to compel the production of documents located abroad. Also, many of the documents are in German, and the parties will have to bear substantial translation costs.

They further argue that this forum's interest is minimal because the injured party is really Opel, a German company, and the alleged injury is to Opel's market position in Europe. Also, many of the acts complained of (particularly the coverup) occurred in Germany, and many of the documents were taken from Opel, a German corporation, and from GM Europe, a Swiss corporation. Defendants also contend that Plaintiffs' interest is minimal because a similar case is pending in Braunschweig, Germany, a forum Plaintiffs arguably found acceptable because they filed a counterclaim there. Further, Defendants argue that this action, especially the RICO claim, conflicts with German law and policy against enforcement of a quasi criminal action in a civil proceeding. Defendants' Joint Motion to Dismiss or Stay, Ex. 9, Merkt Aff.[10]

First and foremost, the purpose of the law on personal jurisdiction and due process is to ensure that a court's exercise of jurisdiction over an individual comports with "traditional notions of fair play and substantial justice," *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, not to permit a wrongdoer to flee from a court's adjudication of his wrongs. Thus, the fact that the members of the Lopez Group no longer live and work in the United States does not mean that this court does not or should not have personal jurisdiction over them.

Further, it should be pointed out that the facts of *Asahi* are substantially different from the facts of this case. In *Asahi*, the corporate defendant had no contacts with the United States other than knowledge that the products it made would eventually reach the forum. Here, all of the Defendants had significant contacts with the forum. The complaint alleges that the Defendants stole numerous trade secrets from a U.S. corporation, and that some of the thefts took place in Michigan. These allegations establish Defendants' substantial contacts with the forum, the consequences and injury that occurred in the forum, and, therefore, the interest of the forum in adjudicating the matter. It is the Defendants' minimum contacts with the forum and the fact that this case arises from those contacts that makes it fair to hold Defendants accountable here. Also, the burden of litigating in the U.S. is equal for Plaintiffs and Defendants. In either forum, the parties will bear travel expenses for witnesses and translation costs.

Plaintiffs also have a substantial interest in litigating their case here, because there is greater access to witnesses and documents in this forum than there is in the German forum. There is no pretrial discovery in Germany. The taking of evidence in Germany is conducted exclusively by the court. Although litigants may recommend that third-party witnesses be called to testify, the court may disregard this recommendation. Usually, party defendants are not required to testify in civil actions in Germany. Plaintiff's Ex. 2, Heckel Aff. In contrast, extensive pretrial discovery is conducted in civil cases here. Both parties and third parties can be compelled to testify and to produce documents. While it may be difficult or impossible under international law to obtain discovery from German residents who are not parties to this proceeding and who are not willing to testify,[11] this difficulty must be weighed against the fact that broad pretrial discovery from named parties is permitted in American

---

10. Also, Defendants contend that German law will likely apply to many of Plaintiffs' claims. Plaintiffs disagree, claiming that American federal law likely applies to the federal law claims and Michigan law applies to the state law claims. However, the parties did not thoroughly analyze

the choice of law issue, and the issue is not before the court at this juncture.

11. Discovery from nonparty witnesses in Germany is governed by the Hague Convention on the Taking of Evidence Abroad.

courts and is not permitted in German courts.

In addition, the court is not persuaded that the procedural and substantive policies of Germany mitigate against the exercise of jurisdiction in this case. No German court has held that RICO is contrary to German law and policy. Plaintiff's Ex. 2, Heckel Aff. Further, it appears likely that a RICO judgment is enforceable in Germany, based on the recent ruling by the Celle court in Germany which characterized this RICO action as a civil action, not a penal action, and permitted service of process in Germany. *Id.* Even if the treble damages portion of a RICO judgment is considered punitive and not compensatory and thus is not enforceable in Germany, the regular damages portion should be enforceable. In addition, in the event that treble damages are not enforceable in Germany, Plaintiffs may seek to enforce their judgment in other countries where Defendants hold assets. For these reasons, the court finds that it is reasonable to exercise personal jurisdiction over all of the Defendants.

## B. Defendants' Joint Motion to Dismiss Based on Forum Non Conveniens or to Stay Pending Resolution of Civil Suit in Germany

### 1. Forum Non Conveniens

▆▆▆▆▆ District courts should give deference to a plaintiff's choice of venue. When a defendant moves to change the forum, he must overcome the presumption that the plaintiff has chosen the proper forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843–44, 91 L.Ed. 1055 (1947). In order to require transfer or dismissal on forum non conveniens grounds, a defendant must show that the balance of hardships presented by litigating in the forum weighs strongly in favor of dismissal or transfer. Further, he must show that the alternative forum is adequate and public interest favors the alternative forum. *Ceramic Corp. v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir.1993). To aid in choosing between adequate alternative forums, the court may consider a number of criteria:

An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.

. . . .

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.

*Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843–44.

The Sixth Circuit has further explained, "a United States citizen should not be deprived of his choice of forum except when the trial would prove oppressive and vexatious to defendant, out of all proportion to the convenience to plaintiff, or when it would be inappropriate because of administrative or legal problems of the court." *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 454 (6th Cir.1988).

▆▆▆▆ The private interests of the litigants and the access to proof criteria, as discussed above, lead to the conclusion that this is the proper forum. With regard to the public interest factors, jury duty may be imposed on this community fairly because of this forum's connection to the controversy. Further, the Plaintiffs have submitted evidence that the German court system is substantially more congested than the system in this district. Plaintiffs claim that a civil case in Germany may take seven years to complete. Plaintiff's Ex. 2, Heckel Aff. In this court, even a case of this magnitude can be completed in approximately two or three years. The court finds that Defendants have failed to overcome the presumption that plaintiff has chosen the proper forum. The balance

of interests requires that the case remain in this court.

## 2. Motion to Stay

Defendants request in the alternative that the court stay this action pending the outcome of the German civil suit. Generally, federal courts exercise jurisdiction concurrently with a foreign court until a judgment is reached which may be pled as res judicata or collateral estoppel in the other forum. *Gau Shan Co., Ltd. v. Bankers Trust Co.,* 956 F.2d 1349, 1352 (6th Cir.) (holding parallel proceedings should be allowed to proceed simultaneously; U.S. court should not enjoin foreign suit), *appeal dismissed,* 966 F.2d 1452 (6th Cir.1992); *Ludgate Ins. Co. v. Becker,* 906 F.Supp. 1233, 1242 (N.D.Ill.1995) (holding parallel proceedings should be allowed to proceed simultaneously; U.S. court should not abstain from exercising jurisdiction). The factors to consider in reviewing a motion to stay due to a parallel proceeding include:

1. inconvenience of the federal court forum;
2. the desirability of avoiding piecemeal litigation;
3. the order in which jurisdiction was obtained.

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

■■ As discussed above, the issues of convenience and the interests of the parties are factors which weigh in favor of proceeding in this court. While Plaintiffs sought the jurisdiction of the German civil court by filing their counterclaim there before filing their complaint in this court, that factor does not compel a stay of this case because the counterclaim is not identical to this suit. The counterclaim seeks only a determination of liability, not of damages. The parties are not identical either: GM Espana is an additional plaintiff in the German suit, and VWOA and the four members of the VW Group are not joined in the German suit. Most importantly, the legal theories raised in this case are substantially different than those raised in the German case. The German suit does not include claims under RICO, the Copyright Act, the Lanham Act, or Michigan common law. In sum, the balance of interests weighs in favor of proceeding with this action.

## C. Defendants' Joint Motion to Dismiss for Lack of Standing or, in the Alternative, to Join Indispensable Parties

### 1. Standing

■■ Defendants also move to dismiss, alleging that Plaintiffs lack standing to bring this action because they assigned their rights to their claims to a German civil law association in connection with the Braunschweig civil suit. In order to maintain suit, a plaintiff must be the real party in interest. Fed. R.Civ.Pro. 17(a). When a plaintiff has assigned his claim, it raises the issue of whether the assignee is the real party in interest. *See, e.g., Robinson v. Kamens,* 664 F.Supp. 118, 120 (S.D.N.Y.1987).

In German civil suits, plaintiffs must specify their damages with particularity. In the Braunschweig action, VW and the Lopez Group challenged the specificity of the counterclaims against them brought by GM, Opel and GM Espana. Instead of specifying the precise damage sustained by each of them, GM, Opel and GM Espana assigned their claims in that action to a civil law association. This is a technical device permitted under German law to permit parties in multiparty actions to pool their claims. Heckel Aff.

Plaintiffs' arguments on this issue are more persuasive. Plaintiffs are the real party in interest because the damages alleged in the complaint can be traced directly to them. Further, the assignment of their claims in Germany was merely a technical pleading device. The assignment only assigned their claims in the German suit, not the claims uniquely based on U.S. law brought in this suit. Also, it should be noted that the assignment to the civil law association does not bar Plaintiffs from bringing other suits in Germany arising out of this dispute; thus, it should not bar Plaintiffs here. Finally, the civil law association is a revocable assignment, as the association can be dissolved at any time by any one member. Plaintiffs have standing to bring this lawsuit.

### 2. Indispensable Parties

 Defendants move in the alternative to join GM Europe and GM Espana as indispensable parties under Federal Rule of Civil Procedure 19. This rule provides:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction of the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.Pro. 19(a).

Defendants argue, in essence, that because some of the secret documents allegedly stolen were taken from GM Europe and GM Espana, these entities must be joined in order for the court to completely resolve this controversy.

The issue under Rule 19 is whether the court can fully adjudicate the claims between the parties without the joinder of GM Espana and GM Europe. The fact that other parties may have their own tort claims against Defendants does not require that they be joined. *Cortez v. County of Los Angeles,* 96 F.R.D. 427, 428 (C.D.Cal.1983). "Rule 19 does not necessitate joinder of plaintiffs advancing tort claims against the same defendant for injuries arising out of the same transaction or occurrences." 96 F.R.D. at 429–30. *Accord Field v. Volkswagenwerk AG,* 626 F.2d 293, 301 (3d Cir.1980).

In addition, Plaintiffs point out that the absence of GM Espana and GM Europe from this litigation does not subject Defendants to a substantial risk of multiple liability. Even if GM Espana and GM Europe subsequently brought suit against Defendants, Defendants would not be subject to liability on the *same* obligation. Thus, GM Espana and GM Eu-rope are not indispensable parties to this action.

### III. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons explained above the court hereby rules as follows:

Defendants' motions to dismiss for lack of personal jurisdiction filed by 1) Lopez; 2) Garcia–Sanz, Van der Auwera, Admiraal, Gutierrez; 3) Piech and Neumann; and 4) VW are hereby DENIED.

Defendants' joint motion to dismiss based on forum non conveniens or to stay pending resolution of civil suit in Germany is hereby DENIED.

Defendants' joint motion to dismiss for lack of standing or in the alternative to join indispensable parties is hereby DENIED.